No. 33,615

DANA C. BROWN et al., *Appellants*, v. THE CITY OF TOPEKA et al., *Appellees*.

(74 P. 2d 142)

Opinion filed December 11, 1937.

*Thomas Amory Lee, A. Harry Crane, Phillip C. Gault* and *Clayton M. Davis,* all of Topeka, for the appellants.

*Ralph W. Oman,* city attorney, and *William A. Dumars,* assistant city attorney, for the appellees.

The opinion of the court was delivered by

HUTCHISON, J.: This action was brought by a number of owners of property abutting on McVicar street in the city of Topeka who resided thereon, to enjoin the city of Topeka from changing the name of McVicar street to Washburn avenue, which it had attempted to do by ordinance passed by the city on July 16, 1935, claiming (1) that there was no legislative grant of authority to the city commissioners to pass and enforce such an ordinance; (2) that the plaintiff property owners on the street have a vested property right in the name of the street, of which the ordinance deprives them without due process and compensation and in violation of the bill of rights of the constitution of the state of Kansas and the fourteenth amendment to the constitution of the United States; and (3) that said ordinance by its terms was an arbitrary, capricious, unjust and unreasonable exercise of municipal power.

This case was here once before and is reported in 144 Kan. 66, 58 P. 2d 64. At that time it came up on an appeal by the plaintiffs from the order of the trial court sustaining a general demurrer of the city to the petition of the plaintiffs, and this court reversed that ruling wholly on the ground that the allegations concerning the third point above stated were not all conclusions of law, but some of them were entitled to be termed "alleged facts" when attacked by a general demurrer which admits for the time being the truth of the facts alleged.

Upon the case being remanded and the demurrer being overruled for the reasons above stated, the city filed its answer to the petition which admitted allegations about the plaintiffs being citizens and owners of property, that the city was one of the first class and that the officers of the city, as named in the petition, were such officers, and denied generally all other allegations and especially the allegations as to the passage of the ordinance changing the name of McVicar street being unjust, unreasonable, arbitrary or capricious and that it was done without notice and opportunity for protest.

Upon the trial evidence was introduced by both parties, and the court made the following findings of fact:

"(a) The plaintiff property owners on McVicar avenue have no vested rights in the name of said street under the laws of this state,

"(b) The powers delegated to the city by the legislature are broad enough to empower the city to regulate and control the streets of the city to the extent that it may name or rename the streets of the city of Topeka, and

"(c) The governing body of the city of Topeka did not act arbitrarily in the passage of said ordinance, and said ordinance by its terms was not an arbitrary or capricious exercise of municipal power. . . ."

From these findings and the judgment rendered thereon, other than the third finding, the plaintiffs appeal, after having presented a motion for new trial, which was overruled.

The first point urged by the appellants is that there is no legislative grant of authority to the city commission to sustain the ordinance changing the name of the street.

It was held in *State, ex rel., v. City of Coffeyville*, 127 Kan. 663, 274 Pac. 258:

"Municipal corporations are creations of law and can exercise only powers conferred by law and take none by implication. . . ." (Syl. ¶ 1.)

This matter as to the limitation of legislative power and authority of cities in this state has been regularly recognized from the earliest days of statehood, as decided in *City of Leavenworth v. Rankin*, 2 Kan. 357, and regularly affirmed to this time. It was given special consideration shortly before the decision in the Coffeyville case, *supra*, in the case of *City of Mankato v. Jewell County Comm'rs*, 125 Kan. 674, 266 Pac. 96, with the same consistent result. The language there used as to the power of cities is that—

"They have only such power and authority as is specifically given them by the legislature, or those that are necessarily implied in the powers specifically given." (p. 676.)

The city in the case at bar frankly concedes that there is no specific legislation in this state authorizing municipalities to change the names of streets, but it insists that there is ample legislative authority specifically given to municipalities for the regulation and control of its streets, which necessarily implies not only the right to name and rename its streets, but infers a duty to do so in the interest of the general public good.

In the early case of *Heller v. A. T. & S. F. R. Co.*, 28 Kan. 625, it was held that—

"The legislature, as the representative of the public, has plenary power over

streets and highways, and as a general rule, full discretion as to opening, improving, and vacating the same." (Syl. ¶ 1.)

In *Anderson v. City of Wellington*, 40 Kan. 173, 19 Pac. 719, it was said:

"The power to pass a city ordinance must be vested in the governing body of the city by the legislature in express terms, or be necessarily or fairly implied in and incident to the powers expressly granted, and must be essential to the declared purposes of the corporation—not simply convenient, but indispensable." (p. 176.)

In *Gould v. City of Topeka*, 32 Kan. 485, 4 P. 822, it was held:

"The control of the public streets of a city is vested in the city, and its exercise by the city is not wholly discretionary, or judicial, or quasi-judicial, or legislative, and is not divided or shared with any other corporation, or board, or tribunal, but is absolute and exclusive in the city itself, and it is not conferred upon the city merely as a benefit which it may exercise, or not, at its option or discretion, but it is imposed upon the city also as an absolute and mandatory duty, which it has no right to evade or avoid. . . ." (Syl. ¶ 3.)

The legislature of Kansas has specifically authorized municipalities and conferred by law upon cities the right to care for streets in certain particulars. G. S. 1935, 12-602, gives the right to grade, regrade, pave and repave and otherwise improve any or all of its streets and levy assessments for the payment of the expense thereof; G. S. 1935, 12-603, the right to pave, grade or repave intervening street connections and levy assessments therefor; G. S. 1935, 13-443, the right to vacate or close any street or portion thereof or to reopen the same. G. S. 1935, 26-201, gives authority for the opening or widening of the streets. Under G. S. 1935, 13-1023, a city may condemn private property for the improvement of streets and alleys. From these and other specific acts of the legislature it is unquestionably not only the right of the city authorities to look after the laying out, paving, repaving of streets and the condemnation of land therefor, but it is the duty of such city to care for the same for the best interests of the public.

There are still other specific sections which more definitely impose such duty and responsibility upon the municipality. In G. S. 1935, 13-412, the city is authorized and required by the legislature—

"To adopt all such measures as may be necessary for the protection of strangers and the traveling public in person and property."

G. S. 1935, 12-101, *fourth*, provides that each city in this state shall have power "To make all contracts and do all other acts in

relation to the property and concerns of the city necessary to the exercise of its corporate or administrative powers." G. S. 1935, 13-401, provides that—

"The governing body shall have the care, management and control of the city and its property and finances; and shall have power to enact ordinances for all the purposes named and provided for in this article not repugnant to the constitution and laws of this state, and to alter, amend, modify and repeal such ordinances."

G. S. 1935, 13-434, gives the city the right to grant franchises for the use of the streets for certain purposes. Many other sections of article 13 concern the right and duty of the city authorities to look after the streets—among others, G. S. 1935, 13-423, which provides for and requires the city "to make all needful police regulations necessary for the preservation of good order and the peace of the city, and to prevent injury to or the destruction of or interference with the public or private property."

The cases of *Desser v. City of Wichita*, 96 Kan. 820, 153 Pac. 1194, and *City of Wichita v. Home Cab Co.*, 141 Kan. 697, 42 P. 2d 972, are cited and discussed in the briefs. In each of them the validity of a taxicab ordinance was involved and upheld, the power of the city being based more on necessary implications than upon the definite wording of the legislative power conferred upon the city. In the former case, although the requirement of a license to use certain paved streets was made practically prohibitive, after citing numerous statutes as to the use of the streets and control of them by the city authorities, it was held to be a valid exercise of municipal control. In the last case it was said in the opinion:

"The city's power to regulate the use of the streets and to regulate, restrict, or license the use of taxicabs for hire is founded on various statutory provisions, including R. S. 12-101, 13-412, 13-413, and 13-910. These sections, under older designations, were cited in *Desser v. City of Wichita*, 96 Kan. 820, 822, 153 Pac. 1194, as sufficient authority for the regulation and licensing of 'jitneys' by a Wichita city ordinance twenty years ago; and surely it cannot be contended that the city's governmental powers are less potent today than they were when the Desser case was decided." (p. 699.)

In the case of *Slocum v. City of Wichita*, 114 Kan. 260, 217 Pac. 297, the ordinance in question was one prohibiting the maintenance of gasoline pumps on the curb of the street, and there appeared to be no specific statute naming pumps, but a statute did authorize the city to "prohibit awnings, awning posts and all other structures or projections projecting upon, over or adjoining the street or sidewalks," and the court said:

"The problem of regulating street obstructions is a practical one, to be solved by the city commission and not by the courts. This case is within the principles discussed and applied in *Desser v. City of Wichita,* 96 Kan. 820, 153 Pac. 1194, and *Decker v. City of Wichita,* 109 Kan. 796, 202 Pac. 89." (p. 261.)

In *Treadwell v. Beebe,* 107 Kan. 31, 190 Pac. 768, it was held that—

"A Kansas municipality has power to accept a bequest of a trust fund and to administer it in perpetuity if the purpose of the trust created by such bequest is for a public, charitable use." (Syl. ¶ 1.)

It is said in 4 McQuillin on Municipal Corporations, 2d ed., 25:

"Streets are named for convenience in locating them and because it has been found to add to their usefulness, not, it is true, in the same sense that a pavement does, but in a sense that it appertains in some wise to such use. Exclusive authority over streets and 'all matters and things appertaining to the use' thereof, given to the council, is a vesting of power to name streets."

It is said in 1 Dillon on Municipal Corporations, 5th ed., 448:

"It is a general and undisputed proposition of law that a *municipal corporation possesses and can exercise the following powers, and no others:* First, those granted in *express words;* second, those *necessarily or fairly implied* in or *incident* to the powers expressly granted; third, those *essential* to the accomplishment of the declared objects and purposes of the corporation—not simply convenient, but indispensable."

Some states have specifically authorized cities to name the streets. Among such is the state of Washington. The statute did not authorize the renaming of the streets, but the supreme court in *Eldridge v. Fawcett,* 128 Wash. 615, 223 Pac. 1040, held that the power given by the ordinance was not exhausted by its previous exercise. In commenting on that situation and ruling the supreme court of Illinois in *Hagerty v. Chicago,* 360 Ill. 97, 195 N. E. 652, approved that ruling, stating that the granting of power to a city to name its streets was ample authority for an ordinance changing the name of the streets.

To see that the streets of the city have proper and suitable names for the better management of city and business affairs therein is in the interest of the general public good, especially when we are assured, as we now are in this case by the findings of the trial court, that the proposed change of name was not an arbitrary or capricious exercise of municipal power. The right and power to change the name of the street is akin to the several powers specifically given to the city concerning the streets, as was held in the case of *Bacon v. Miller,* 247 N. Y. 311, 160 N. E. 381.

With the numerous duties and responsibilities placed upon the municipal corporation by the legislature as to the care, use, change and control of the streets of the city, it requires no strained construction to conclude that the naming and renaming of the streets within the city limits is a power and authority that is necessarily implied in the many powers concerning the same that have been specifically given to the city by the legislature.

The second point raised in this appeal is that the plaintiffs have a vested property right in the name of this street of which the ordinance in question deprives them without due process and compensation. It is stated in this connection that the ownership of the real estate carries with it a property interest, incidental to the ownership, in the name of the avenue itself; that the change was made without the request of any one residing on the street or owning any of the property on the street, and was against their protest. It is further stated that the name, McVicar avenue, has been the name of that street for more than fifty years and long before the lots thereon or the avenue became a part of the city of Topeka; that the name of the avenue is an integral and necessary part of the legal description of all the lots on that avenue and the owners will necessarily incur expense in having the correction made in the abstract of title to each of the lots; that it will also require a change to be made in all policies of fire insurance and will cause confusion in assessing the property and in the distribution of mail for some time.

Appellants refer to a local case which was not appealed and therefore not contained in the reports, also to a decision of the superior court of Cincinnati, Ohio, which was against the validity of the ordinance, but that case was never appealed to the court of last resort. The case of *Foster v. City of Topeka*, 112 Kan. 253, 210 Pac. 341, is cited, but it concerns the closing of an alley and does not particularly help determine the matter of vested rights.

Appellants refer to the case of *Bacon v. Miller*, supra, cited by appellees and insist that the stronger reasons for the decision therein were the other questions involved rather than that of vested rights. There was in New York state a statute authorizing cities to name and rename streets. The opinion referred to the specific legislation and held that there was no vested right in the name of the street.

In the recent case of *Hagerty v. City of Chicago,* supra, other matters were involved, but the court held:

"We are of the opinion that appellants have no vested property right in the name of the street involved in this proceeding." (p. 100.)

Appellants cite and strongly rely upon the decision in the case of *Anderson v. Corporation of Dublin,* 15 L. R. 410 (Ireland, Chancery Div. 1885), in which the court held that the landowners had a property right in the name of the street, and further that the action of the city was not in good faith, but was unreasonable and arbitrary. It is worthy of recalling in this connection that in Kansas the county is the owner of the city streets. Appellants claim the original name of the street is a vested or property right belonging to the owners of the lots. The definition of vested rights is given in 12 C. J. 955 as follows:

"Rights are vested when the right to enjoyment, present or prospective, has become the property of some particular person or persons as a present interest. On the other hand, a mere expectancy of future benefit, or a contingent interest in property founded on anticipated continuance of existing laws, does not constitute a vested right."

In the same volume it is said:

"There can be no vested right in an existing law which precludes its change or repeal. . . ." (p. 958.)

"The owner of land has a vested right to its lateral support, and, where it abuts on a street, he also has a vested right to access to and from the street." (p. 959.)

Even the appropriation by a municipality of an easement in land abutting on the street does not divest the owner of his dominion over the property subject to the easement. (44 C. J. 960.)

We are not convinced that the name of a street is a property right of the owner of an abutting lot, and we therefore conclude that such name can be changed by city ordinance without violating section 1 of the bill of rights of the constitution of Kansas or the fourteenth amendment to the constitution of the United States, when the change is not unreasonable or made arbitrarily or capriciously.

The judgment is affirmed.

HARVEY, J., dissenting.