No. 50,361

HAROLD VAUGHN, RAYMOND D. FLUMMER and LEE HENDERSON, as the BOARD OF COUNTY COMMISSIONERS OF GREENWOOD COUNTY, KANSAS, MARILYN WILSON, as the COUNTY CLERK-ASSESSOR of said County, and VIRGINIA L. CONNELL, as the COUNTY TREASURER of said County, *Appellants and Cross-Appellees,* v. I. NADEL and HERBERT GUSSMAN, a Partnership, d/b/a NADEL AND GUSSMAN; the BOARD OF TAX APPEALS OF THE STATE OF KANSAS; and JAMES COBLER, as the DIRECTOR OF ACCOUNTS AND REPORTS, *Appellees and Cross-Appellants.*

(618 P.2d 778)

Original opinion (unpublished) filed April 5, 1980. Opinion on rehearing filed November 1, 1980.

*Bemis G. Terry,* of Lowe, Terry & Roberts, of Olathe, argued the cause and was on the brief for the appellants.

*Robert J. O'Connor,* of Hershberger, Patterson, Jones & Roth, of Wichita, was on the brief for appellees Nadel and Gussman.

*Curt T. Schneider,* attorney general, *Charles A. Briscoe,* deputy attorney general, and *Clarence J. Malone,* assistant attorney general, were on the brief for appellee James Cobler, Director of Accounts and Reports.

*Robert E. Duncan, II,* State Board of Tax Appeals, was on the brief *amicus curiae.*

The opinion of the court was delivered by

FROMME, J.: An unpublished opinion was filed in this case on April 5, 1980, affirming a dismissal of the case by the district court. A motion for rehearing was timely filed and later granted on May 27, 1980. The motion for rehearing was pending in this court when L. 1980, ch. 236 was passed by the 1980 Kansas legislature and became effective. (H. B. 3228.) Generally it may be said the legislature in passing H. B. 3228 granted to the district and appellate courts jurisdiction to hear and determine appeals from final orders of the Board of Tax Appeals (the Board) which orders may have been appealed to the court and dismissed after January 1, 1980, but before the effective date of the act, April 16, 1980. This case falls in that time span.

Our original unpublished opinion was based on *Board of Johnson County Comm'rs v. Ameq, Inc.,* 227 Kan. 93, 605 P.2d 119 (1980). In *Ameq* this court determined that when the State Board of Tax Appeals enters an order favorable to the taxpayer in a proceeding brought to the Board seeking recovery of taxes paid under protest, the county taxing officials had been given no right

of appeal by the legislature in K.S.A. 74-2426, 60-2101(*d*), or 79-2005.

We are here and now confronted with the primary question of whether the retroactive application of H.B. 3228 to this case is constitutionally permissible. If it is, the case must be remanded to the district court for hearing.

The background facts of this case, although not absolutely necessary to a determination of issues, will be helpful in understanding the questions presented. The defendants-appellees are I. Nadel and Herbert Gussman, a partnership doing business as Nadel and Gussman. The partnership paid its ad valorem taxes for 1975 on oil properties in Greenwood County under protest. It then filed application for refund of taxes paid under protest pursuant to K.S.A. 79-2005 and appealed to the Board. The Board made and entered its final order on the application for refund in favor of the taxpayer, reduced the 1975 appraised valuations on these oil properties by 20%, and ordered Greenwood County to refund the excess taxes paid. The Greenwood County officials perfected an appeal from said order to the District Court of Shawnee County under the provisions of K.S.A. 60-2101(*a*) [Corrick], now K.S.A. 1979 Supp. 60-2101(*d*). They contended:

(1) that appellees' written protest statement did not comply with K.S.A. 79-2005 by failing clearly to state the grounds of the protest and, therefore, failed to confer jurisdiction upon said Board;

(2) that the validity of the 1975 Oil and Gas Manual may not be challenged or determined in proceedings upon an application for refund of taxes paid under protest under K.S.A. 79-2005 before the Board and that an alleged failure of the director cannot furnish the jurisdictional basis for granting relief in a tax protest application under said statute;

(3) that the Director of Property Valuation has the exclusive duty and responsibility to prepare and promulgate to county clerks and assessors such manuals, and that the Board has no jurisdiction to revise, abrogate or nullify the same in such proceedings;

(4) that the Board failed to make findings of fact and conclusions of law clearly disclosing the basis of said purported order;

(5) that there was no substantial competent evidence supporting the purported findings of fact and conclusions of law in said purported order;

(6) that said purported findings of fact and conclusions of law failed to support the said purported order; and

(7) that the said purported order was unreasonable, arbitrary, capricious, void, illegal and of no force or effect.

The district court concluded it had no jurisdiction to hear the matter and dismissed the case. An appeal eventually came to this court on the order of dismissal and as previously recited the dismissal was first affirmed by this court and then a motion for rehearing was granted.

The part of H.B. 3228 pertinent to this appeal is as follows:

"(f) The district courts of this state and its appellate courts shall have jurisdiction to hear and determine any appeals, or purported appeals, which may have been dismissed after January 1, 1980, but before the effective date of this act, from final orders of the board of tax appeals concerning tax protests, tax grievances, tax exemption statutes or original proceedings before the board under the provisions of K.S.A. 1979 Supp. 60-2101, subsections (a), (b) and (d), or any of their statutory predecessors, under the provisions of K.S.A. 1979 Supp. 74-2426, or any of its statutory predecessors, or under the provisions of K.S.A. 79-2005, or any of its statutory predecessors. Such jurisdiction shall be exercised by the courts in all cases where such appeals, or purported appeals, have not been finally disposed of either (1) upon the merits thereof or, (2) for lack of substantial compliance with the requirements for appeal under the statutes mentioned above or (3) upon some grounds other than the dismissal thereof on the basis of the purported lack of any appellate jurisdiction over such appeal. Any appeal or purported appeal from such final order of the board under any of the statutes mentioned above which may have been dismissed, or which may hereafter be dismissed, by a district court or appellate court on the basis that the statutes mentioned above, or any of them, did not apply to such appeal, shall be reinstated before such court immediately upon the request of any party to such appeal, and the courts shall thereafter exercise further appellate jurisdiction over such appeal in the same manner and to the same extent as if such appeal had not been dismissed." L. 1980, ch. 236, § 1 (f).

It is apparent a retroactive application is built into the statute by expressly extending jurisdiction to hear those appeals dismissed after January 1, 1980, but before April 16, 1980 (the effective date of the act). Two questions immediately surface. First, will the statute have the effect of disturbing vested rights, and second, is the statute constitutionally permissible?

In examining these questions we start with the proposition that the constitutionality of a statute is presumed; that all doubts must be resolved in favor of its validity, and before the statute may be stricken, it must clearly appear the statute violates the Constitution. It is the court's duty to uphold the statute under attack, if

possible, rather than defeat it. If there is any reasonable way a statute may be construed constitutionally permissible, that should be done. *State ex rel. Stephan v. Lane,* 228 Kan. 379, Syl. ¶ 1, 614 P.2d 987 (1980).

We start with the question of vested rights. Under the decisions of this court in *Board of Johnson County Comm'rs v. Ameq, Inc.,* 227 Kan. 93, and *In re Lakeview Gardens, Inc.,* 227 Kan. 161, 605 P.2d 576 (1980), there could be no appeal from an order of the Board holding in favor of the tax protestant.

The order of the district court dismissing the case was appealed to this court and our decision has not become final, because a motion for rehearing was pending when H.B. 3228 became effective. It is argued that under our decisional law as it existed at the time the order of the Board was entered, no appeal from that order was possible; the order was final.

We cannot agree. There can be no vested right in an existing law which precludes its change or repeal as applied to pending litigation. *Brown v. City of Topeka,* 146 Kan. 974, 981, 74 P.2d 142 (1937); *Baumann v. Smrha,* 145 F. Supp. 617, 625 (D. Kan. 1956).

In *Ash v. Gibson,* 145 Kan. 825, 67 P.2d 1101, *modified* 146 Kan. 756, 74 P.2d 136 (1937), on almost identical facts, this court reversed a trial court on an ordinance issue. On appeal during the time a motion for rehearing was being considered, a statute became effective changing the city's authority to enact the ordinance in question. This court considered the motion for rehearing in light of the new statute and made a final disposition of the case in accordance with the law in effect when final disposition was made. *Ash* was cited with approval by this court in *State ex rel. Schneider v. City of Topeka,* 227 Kan. 115, 120, 605 P.2d 556 (1980), in which a new law on tax increment financing was considered as it affected urban renewal programs. See also *Manzanares v. Bell,* 214 Kan. 589, 522 P.2d 1291 (1974), in which a recent Kansas no-fault insurance law was applied to issues on appeal in a pending case.

Rights are vested when the right to enjoyment, present or prospective, has become the property of some particular person or persons as a present interest. On the other hand, a mere expectancy of future benefit, or a contingent interest in property founded on anticipated continuance of existing laws, does not

constitute a vested right. *Brown v. City of Topeka,* 146 Kan. at 981. See also *Bain v. Boykin,* 180 Va. 259, 23 S.E.2d 127 (1942). A vested right is a right so fixed that it is not dependent on any future act, contingency or decision to make it more secure, and a defendant in an action does not acquire a vested right in a judgment dismissing an appeal, but only an inchoate right which will become vested upon the happening of an affirmance by the appellate court or by the expiration of the period allowed for appeal.

Under Rule No. 7.06(a), Rules of the Supreme Court:

> "A motion for rehearing or modification in a case decided by the Supreme Court may be served within twenty (20) days of the date of the decision. The issuance of the mandate shall be stayed pending the determination of the issues raised by such a motion. *If a rehearing is granted, such order suspends the effect of the original decision until the matter is decided on rehearing."* 225 Kan. xlviii. Emphasis supplied.

K.S.A. 60-2106(*c*) provides that this court may by rule provide for post-decision motions (motions for rehearing) and by rule determine when a decision of an appellate court shall become final. Under Supreme Court Rule No. 7.06(a) above, when a rehearing is granted such order suspends the effect of the original decision until the matter is decided on rehearing.

In granting the rehearing in this case this court merely exercised its power of control over pending litigation, and this was before any final determination had been made. No judgment determining the rights of these litigants has as yet passed beyond the control of this court. The cause is still pending and will continue to pend until the mandate goes down. The court, up to that time, has deprived the litigants of no vested right. When a judgment has been pronounced and has become final then and only then have the rights of the defendants been duly disturbed. There is no vested right in a judgment held by the party in whose favor it is rendered so as to preclude its re-examination and vacation in the ordinary modes of appeal provided by law. It is true in this case that this court had previously held there was no right of appeal in these cases, but the court always has the right and the duty to re-examine its prior decisions. If on re-examination a majority of the members of the court hold differently, then the former case law no longer controls.

In *Jones v. Garrett,* 192 Kan. 109, 386 P.2d 194 (1963), the point is made that there are no vested rights in any particular remedy.

Procedure is the mode or proceeding by which a legal right is enforced. It is that which regulates the formal steps in an action or other proceeding. It is the order in which an action or prosecution is conducted. In *Jones* it is said:

"It is the law of this state that a statute which merely changes a remedy is not invalid, as there are no vested rights in any particular remedy. While generally statutes will not be construed to give them retroactive application unless it appears that such was the legislative intent, nevertheless when a change of law merely affects the remedy or law of procedure, all rights of action will be enforced under the new procedure without regard to whether they accrued before or after such change of law and without regard to whether or not the suit has been instituted, unless there is a saving clause as to existing litigation. [Citations omitted.]" 192 Kan. at 115.

See also *Nitchals v. Williams,* 225 Kan. 285, 291, 590 P.2d 582 (1979); .*Woodring v. Hall,* 200 Kan. 597, 438 P.2d 135 (1968).

There is no vested rights problem in this case. The appeal from the Board's order was pending in this court on a motion for rehearing. Kansas cases in the past have concerned changes in the law and we have applied new procedure to matters pending on appeal. The rules of this court provide that a decision is not final until the matter is decided on rehearing.

Next we turn to the due process question. The essential elements of due process of law are notice and an opportunity to be heard and to defend in an orderly proceeding adapted to the nature of the case. *State ex rel. Stephan v. Lane,* 228 Kan. 379, Syl. ¶¶ 1, 8, 614 P.2d 987 (1980).

"The right to appeal, in the strict sense, depends entirely upon statute or express constitutional provision, and this is true of judicial review in the broader sense where the question is one of compliance with the statutory method of review. The legislature acting within its constitutional powers may prescribe the procedures and conditions under which, and the court in which, judicial review of the action of the administrative agency may be had. The right of review is governed by the particular provisions of the act involved and is limited to its terms. The procedure prescribed by the statute must be followed in seeking the review especially those particulars which are *jurisdictional* or mandatory; in some instances it is declared that the statute must be strictly followed." 2 Am. Jur. 2d, Administrative Law § 716, p. 618. Emphasis supplied.

"[I]t can hardly be doubted that the legislature, acting within its constitutional powers, may prescribe the procedures and conditions under which, and the court in which, judicial review of administrative orders may be had." 2 Am. Jur. 2d, Administrative Law § 732, p. 633.

The legislature has full authority to establish procedural prerequisites to the exercise of jurisdiction by the district courts over

administrative appeals. *Jenkins v. Newman Memorial County Hospital,* 212 Kan. 92, 95, 510 P.2d 132 (1973); *Thompson v. Amis,* 208 Kan. 658, 661, 493 P.2d 1259, *cert. denied* 409 U.S. 847 (1972).

This is pointed out by the Constitution of the State of Kansas, Art. 3, § 6 (b), which states:

"The district courts shall have such jurisdiction in their respective districts *as may be provided by law."* Emphasis supplied.

As to the Supreme Court, Art. 3, § 3 states:

"The supreme court shall have original jurisdiction in proceedings in quo warranto, mandamus, and habeas corpus; *and such appellate jurisdiction as may be provided by law.* It shall hold one term each year at the seat of government and such other terms at such places as may be provided by law, and its jurisdiction shall be co-extensive with the state." Emphasis supplied.

H.B. 3228 provides for reinstatement of dismissed appeals on request of any party to such appeal followed by the exercise of jurisdiction over the appeal as if such appeal had not been dismissed. The application of the reinstatement provisions of the act is to those appeals dismissed after January 1, 1980, but before April 16, 1980. This is not an unreasonable period of time and should impose no great burden of appeals on the courts of this State. Due process rights appear to be adequately protected.

The defendants, Nadel and Gussman, rely largely on *Eakes v. Hoffman-LaRoche, Inc.,* 220 Kan. 565, 552 P.2d 998 (1976). In *Eakes* a claimant was awarded and was paid an award under the Workmen's Compensation Act. Under the act as it existed at the time of payment no review by the director was provided after final payment had been made. Ten days after the payment was made, a new statute became effective which extended the right of review to any award. The final payment language did not appear in the new statute. Almost a year later the claimant filed a motion for review. It was held by this court that the award had become final and there was no jurisdiction to review the award.

As previously pointed out the question of retroactive application of a procedural statute extending rights of review largely depends on the intent of the legislature. In *Eakes* there was nothing in previous workmen's compensation statutes or in the act itself which indicated an intent for retroactive application. The case can be distinguished on the basis of the lack of legislative intent. Syl. ¶ 1 of *Eakes* states the basis for the court's decision as follows:

"A statute will operate prospectively rather than retrospectively unless its language clearly indicates that the legislature intended the latter, and retrospective application will not be given where vested rights will be impaired." 220 Kan. 565.

In the present case no rights had yet vested under the Board's decision, as has been pointed out, and a clear intent to have the review provisions applied retroactively is expressed by the legislature in H.B. 3228.

Nadel and Gussman make a "uniform and equal rate of assessment and taxation" argument, pointing to other individuals who apparently obtained the relief they sought by a suit brought in Elk County. They argue, since that court has given identical relief to that in the order of the Board of Tax Appeals, the order of the Board should not be disturbed. They assert if the order of the Board is disturbed, this will result in a denial of equal protection of the law under the Fifth and the Fourteenth Amendments to the Constitution of the United States.

The example used in the illustration is not persuasive. It is the assessments and rates of taxation that are required to be equal and uniform within each district. This court has repeatedly held that Art. 11, § 1 of the Constitution of the State of Kansas requires the legislature to provide for uniformity in the basis of assessment as well as in the rate of taxation. Uniformity in taxing implies equality in the burden of taxation. *State ex rel. Stephan v. Martin,* 227 Kan. 456, 461, 608 P.2d 880 (1980). One of the methods provided by the legislature for testing and assuring uniform and equal taxation is provided by the statutory procedures for protest of tax payments. See K.S.A. 79-2005 and K.S.A. 74-2426 as amended. The fact that one taxpayer utilizes these procedures and is successful in having taxes reduced can only be considered as having equalized the tax burden by making taxes uniform.

At the present time H.B. 3228 merely permits review of the Board's order, which order directed a reduction in the appraised valuations of defendants' property. No prior review on the merits has been had. If review on the merits results in a reversal of the Board's order that merely indicates the defendants' assessments and rates were uniform and equal as originally set by the county officials. If the order is approved on review it will mean the 20% reduction in appraised valuations ordered by the Board is neces-

sary to place defendant's taxes on an equal and uniform basis with their neighbors. The argument lacks merit.

The defendants next contend the statute in question, H.B. 3228, is constitutionally defective and in direct violation of § 2 of the Kansas Bill of Rights which provides:

"All political power is inherent in the people, and all free governments are founded on their authority, and are instituted for their equal protection and benefit. *No special privileges or immunities shall ever be granted by the legislature,* which may not be altered, revoked or repealed by the same body; and this power shall be exercised by no other tribunal or agency." Emphasis supplied.

Defendants argue the effect of H.B. 3228 is to relieve the county, against whom an adverse order was rendered, from the burden of the order of the Board. We do not agree. H.B. 3228 merely sets up a procedure for examination and determination of the validity of the order of the Board on its merits. H.B. 3228 did not confer a special privilege as that term is used in the Bill of Rights, as argued by defendants. In *Johnson v. Reno County Comm'rs,* 147 Kan. 211, 225, 75 P.2d 849 (1938), it is said:

"The constitutional provision relied upon [Kansas Bill of Rights § 2] has been definitely construed as referring solely to political privileges and not to those relating to property rights. [Citations omitted.]"

See also *State, ex rel., v. Urban Renewal Agency of Kansas City,* 179 Kan. 435, 439, 296 P.2d 656 (1956).

H.B. 3228 confers no political privileges. It is merely a procedural statute authorizing an appeal from an order of the Board.

The final point—Does this act of the Kansas legislature (H.B. 3228), in providing for an appeal in this case, amount to a violation of the doctrine of separation of powers?

Defendants-appellees argue that jurisdiction of a court to hear appeals is strictly a judicial question and, when that question has once been decided, legislative interference in that judicial area violates the doctrine of separation of powers. We disagree with that conclusion in this case.

The doctrine of separation of powers is extensively discussed in *Van Sickle v. Shanahan,* 212 Kan. 426, 511 P.2d 223 (1973), where this court concludes:

"Generally speaking, the legislative power is the power to make, amend, or repeal laws; the executive power is the power to enforce the laws, and the judicial power is the power to interpret and apply the laws in actual controversies." 212 Kan. at 440.

See *State, ex rel., v. Bennett,* 219 Kan. 285, 547 P.2d 786 (1976).

As previously pointed out, the Kansas Constitution gives to the district and appellate courts jurisdiction to hear appeals, such as may be provided by law. The legislature, under the constitutional provisions previously cited, has been given the power to grant, limit and withdraw the appellate jurisdiction to be exercised by the courts. *State v. Sims,* 184 Kan. 587, 588, 337 P.2d 704 (1959). See also 16 Am. Jur. 2d, Constitutional Law § 331, p. 868.

Procedure has been defined as the mechanics by which a legal right is enforced, as distinguished from the law which gives or defines the legal right, and which, by means of the proceeding, the court is to administer the legal right. *Jones v. Garrett,* 192 Kan. at 114. There is no violation of the doctrine of separation of powers when the legislature merely changes procedural methods.

*Wyandotte County Comm'rs v. General Securities Corp.,* 157 Kan. 64, 138 P.2d 479 (1943), provides a typical example of a violation of the separation of powers doctrine. There the power which the legislature attempted to exercise was a judicial power—the interpretation of an existing statute. Under the facts of that case the legislature attempted by legislative act to direct the judiciary in the interpretation of an existing statute. The court stated:

" 'The determination of the true state and meaning of the existing law is not a legislative function, but is a judicial function . . . and the legislature cannot declare what the law was in the past.' " 157 Kan. at 76.

In the present case the legislature did not attempt to tell the courts what the law was; it did not attempt to force any different decision as to the ultimate rights of the parties with reference to the tax refund. The legislature merely opened the door to the courtroom and then stood back to await whatever decision on the merits might be forthcoming.

In *United States v. Sioux Nation of Indians,* 448 U.S. 371, 65 L.Ed.2d 844, 100 S.Ct. 2716 (1980), the United States Supreme Court goes far in upholding a federal statute which had the effect of requiring a court to hear a case involving Indian rights, after the case had been dismissed on the grounds of res judicata. The court found that Congress in no way attempted to dictate the outcome of the Court of Claims' review of the case on the merits. The Court of Claims was completely free to reaffirm its 1942 judgment previously reached some years before.

The words of the high court in that case appear to be of particular interest in our present case. In *Sioux Nation of Indians,* the court said:

"There are two objects that might be raised to the constitutionality of this amendment, each framed in terms of the doctrine of separation of powers. The first would be that Congress impermissibly has disturbed the finality of a judicial decree by rendering the Court of Claims' earlier judgments in this case mere advisory opinions. . . .

"The second objection would be that Congress overstepped its bounds by granting the Court of Claims jurisdiction to decide the merits of the Black Hills claim, while prescribing a rule for decision that left the Court no adjudicatory function to perform." 65 L.Ed.2d at 861.

"When Congress enacted the amendment directing the Court of Claims to review the merits of the Black Hills claim, it neither brought into question the finality of that court's earlier judgments, nor interfered with that Court's judicial function in deciding the merits of the claim. When the Sioux returned to the Court of Claims following passage of the amendment, they were there in pursuit of judicial enforcement of a new legal right. Congress had not 'reversed' the Court of Claims' holding that the claim was barred by res judicata, nor, for that matter, had it reviewed the 1942 decision rejecting the Sioux' claim on the merits. As Congress explicitly recognized, it only was providing a forum so that a new judicial review of the Black Hills claim could take place. This review was to be based on the facts found by the Court of Claims after reviewing all the evidence, and an application of generally controlling legal principles to those facts. For these reasons, Congress was not reviewing the merits of the Court of Claims' decisions, and did not interfere with the finality of its judgments." 65 L.Ed.2d at 870.

In view of what has been said we find no constitutional impediment to L. 1980, ch. 236, § 1 (*f*) as adopted by the legislature of the State of Kansas so far as the separation of powers doctrine is concerned. It is procedural in nature. The present case was pending on a motion for rehearing when the law became effective. However, even though the case had not been pending, the intention of the legislature is clearly expressed so as to apply the act retroactively. This is proper in those cases where procedural changes are adopted and no vested rights are affected. No attempt has been made by the legislature to require any particular judicial decision on the past controversy. This court holds that L. 1980, ch. 236, § 1 (*f*) as passed by the Kansas legislature is valid and is not constitutionally impermissible for any of the reasons urged on this court.

The judgment of the district court dismissing the appeal taken from the order of the Kansas Board of Tax Appeals is reversed and the case is remanded to the District Court of Shawnee County for further proceedings.