ANNIE E. O. WYLIE *vs.* FRED M. KIRBY, Trading as
F. M. KIRBY & COMPANY.

*Leases; default; forfeiture without individual dereliction;
relief in equity. Injunction to enjoin ejectment.*

An action for ejectment was brought by a landlord to eject
the tenant because of a default of 15 days in paying the
rent; the tenant prayed for an injunction to enjoin the eject-
ment proceedings; on an appeal from an order granting the
injunction it appeared that the default was not attributable
to the lessee's individual dereliction, but happened in spite
of his reasonable provision for the punctual performance of
his contractual duty. *Held,* that upon the facts of the case
it would be grossly inequitable to deprive the lessee of the
benefit of his large expenditures upon improvements, because
of a mischance which involved on his part no personal delin-
quency, and that an injunction should issue to restrain the
ejectment proceedings.                          p. 286

Equity will grant relief from a forfeiture which is provided
merely to secure the payment of money.          p. 286

Courts of equity are closed against a tenant in cases of for-
feiture only when the same has occurred by his own wilful
and culpable neglect or failure to fulfill the terms of his
covenant, and not in cases where the omission has been
occasioned by unavoidable accident.             p. 287

Equity has power to relieve from a forfeiture for the non-
payment of rent on the ground that the condition is intended
as a mere security.                             p. 288

*Decided April 4th, 1911.*

Appeal from the Circuit Court of Baltimore City
(Stockbridge, J.).

The cause was argued before BOYD, C. J., BRISCOE, PEARCE, PATTISON and URNER, JJ.

*Arthur R. Padgett* and *John Philip Hill* (with whom were *Hill, Ross & Hill* on the brief), for the appellant.

*William C. Smith,* for the appellee.

URNER, J., delivered the opinion of the Court.

This is a suit in equity by a lessee to restrain an action of ejectment instituted by the lessor for the purpose of enforcing the forfeiture of a lease for non-payment of an installment of rent at the time stipulated. The essential facts of the case are undisputed. It appears that Morris K. Wylie leased a lot of ground improved with a store building on Lexington street in Baltimore City to Albert A. Brager for a term of five years beginning January 1st, 1905, at an annual rent of $4,500.00, payable in equal installments on the first day of each month. Provision was made in the lease for its renewal for a further term of five years at the option of the lessee upon his giving a prescribed notice. It was also provided "that upon default made by the said lessee in the performance of any covenant or condition of this lease to be performed by him the said lessor shall have the right after the continuance of said default for fifteen days to terminate this lease and the lessee shall, if the said lessor requires it, quit and remove from said leased premises immediately after thirty days' written notice from the said lessor." The lease was assigned on April 9th, 1902, to the appellee. Subsequently the lessor died leaving a will by which he devised the leased property to his widow, who is the present appellant. About the first of May, 1907, the building on the premises was condemned and its removal ordered by the Building Inspector of Baltimore City. A controversy then arose between the appellant and appellee as to whose duty it was to rebuild under the terms of the lease. A bill in equity was filed by the appellee on May 4th to have the appellant

required to restore the building, and in the meantime he withheld the installment of rent for that month. After this default had continued for fifteen days the appellant gave notice of the termination of the tenancy. On May 31st parties entered into an agreement that the lease should continue in full force and effect, that the appellee should pay all rent thereby reserved when and as it became payable, including the rent due May 1st, and should perform all covenants of the lessee in the same manner as if the condemnation had not been made and the building had not become untenantable. It was agreed also that the appellee should at his own expense at once remove the old building (which covered only part of the lot), and erect a substantial brick store building covering the whole of the lot to cost not less than $18,000.00 nor more than $25,000.00, that he should pay the taxes on the property to the extent of any assessment in excess of a designated amount and keep the building insured and in repair during his tenancy, and that upon its termination, on December 31, 1914, he should surrender the premises to the appellant in good order and condition, ordinary wear and tear excepted. It was further agreed that if it should be determined within three years, in the equity suit instituted by the appellee, that he was entitled to have the building restored by the appellant, it should be her duty on or before December 31st, 1914, to pay to the appellee without interest the amount paid by him for the reconstruction, but if the appellee should fail within the time designated to obtain a decision in his favor, he should not be entitled to such reimbursement. In pursuance of this agreement the appellant erected the proposed new building at a cost of about $22,000.00. It was later determined by the Circuit Court No. 2 of Baltimore City that the lessor was not obliged to rebuild, and this decision was affirmed on appeal to this Court in *Kirby* v. *Wylie,* 108 Md. 501.

The store operated by the appellee on the leased premises was one of seventy-seven retail enterprises conducted by him in various cities. The headquarters of this extensive business

are located at Wilkes-Barre, Pennsylvania. All the store buildings are held under lease and all rents are paid from the central office. There is a clerk who has charge of all pay- ments for these purposes. It is his duty to prepare checks for the rent, have them signed by the appellee or his chief assistant, and mail them to the lessees as the installments of rent are about to fall due. He reports the items to another clerk who charges them to the accounts of the respective stores and notifies their managers accordingly, and also reports the charges to the bookkeeper. The latter enters the items on the general ledger. In the case of the lease in question the rent had been regularly and punctually paid without varia- tion, except at the time of the controversy in May, 1907, until the occurrence of the default which has given rise to the present litigation. It was the custom to make the remit- tance on the 27th of each month so that it would be received by the appellant before the rent day. In the pressure of busi- ness due to the near approach of the holiday season, and as the result of more inadvertence, the rent clerk omitted to pre- pare and mail a check for the rent falling due on December 1st, 1909. The clerk to whom he customarily reported assumed, however, that the remittance had been made as usual and charged up the rent to the Baltimore store as hav- ing been paid on November 27th. The item was then passed on in regular course to the bookkeeper who entered it on the general ledger. No intimation was received by the appellee from any source that the December rent had not been paid until about the 18th or 20th of the month when Mr. Brager, the original lessee, called up the Wilkes-Barre office by tele- phone and stated that a notice had been served on him by the appellant to the effect that the rent had not been paid and that the lease was forfeited. A similar notice was served on the Baltimore manager. An immediate tender of the rent and interest was made to the appellant, but she declined it and brought the action of ejectment which is sought to be restrained in the present proceeding. As indicated in her testimony the appellant believed the rent reserved in the lease

was inadequate and she therefore did not ask for the payment when she failed to receive the December remittance at the usual time, but waited for the fifteen days to expire after which she might terminate the lease.

The sole question we are to decide is whether under the circumstances stated a Court of equity has authority to restrain the attempted forfeiture of the lessee's estate.

It is apparent that the failure in this case to pay the rent at the time prescribed was not due to ordinary indifference or neglect on the part of the appellee. In the unusual situation in which he was placed with respect to the management of a great number of stores, it was not practicable for him to personally attend to the remittance of all the various installments of rent or to do more than provide the means and agencies for their regular and punctual payment. The failure to remit the December rent to the appellant occurred not only without the appellee's knowledge, but contrary to his express instructions. He was kept in ignorance of the inadvertence of one clerk in failing to forward the rent by the mistake of another in assuming and reporting the payment as having been made in the usual course of business. It is quite evident, therefore, that the default upon which the appellant relies for the forfeiture of the lease was not justly attributable to any individual dereliction of the lessee, but happened in spite of his reasonable provision for the faithful and punctual performance of his contractual duty. It would be obviously and grossly inequitable to deprive him of the benefit of his large expenditures for permanent improvements, so far in advance of the expiration of the term, merely because of a mischance which involved on his part no element of personal deliquency.

It is an established doctrine that equity will grant relief from a forfeiture, where such a condition is provided to secure the payment of money, as in the case of a right of re-entry for the non-payment of rent at the time designated in the lease. *Carpenter* v. *Wilson,* 100 Md. 22; *City Bank of Baltimore* v. *Smith,* 3 G. & J. 280; *Story's Equity Jur.,*

13th ed., secs. 1314 to 1316. In his discussion of the subject JUSTICE STORY observes: "In reason, in conscience, in natural equity, there is no ground to say because a man has stipulated for a penalty in case of his omission to do a particular act (the real object of the parties being the performance of the act), that if he omits to do the act he shall suffer an enormous loss wholly disproportionate to the injury to the other party."

The principle is thus stated in *1st Pomeroy's Eq. Jur.,* section 453: "Where a lease contains a condition that the lessor may re-enter and put an end to the lessee's estate, or even that the lease shall be void, upon the lessee's failure to pay the rent at the time specified, it is well settled that a Court of equity will relieve the lessee and set aside a forfeiture incurred by his breach of the condition, whether the lessor has. or has not entered and dispossessed the tenant. This rule is based upon the notion that such condition and forfeiture are intended merely as a security for the payment of money."

In 2 *Taylor on Landlord and Tenant,* section 496, it is said: "But Courts of equity are only closed against the tenant where the forfeiture is incurred by his wilful and culpable neglect to fulfill the terms of his covenant and not in cases where the omission has been occasioned by inevitable accident. And the general rule to be applied to all such cases seems to be that Courts of equity will relieve where the omission and subsequent forfeiture are the result of mistake or accident and the injury and inconvenience arising from it are capable of compensation; but where the transaction is wilfull, or the compensation impracticable, they invariably refuse to interfere."

The case at bar is clearly an appropriate one for the application of this equitable principle. There is nothing in the lease or in the record at large to justify the inference that the condition of forfeiture was intended to serve any other purpose than that of a security for the payment of the rent at the times and in. the instalments prescribed; and all the compensation the appellant could rightfully demand was

promptly tendered as soon as the appellee learned that the amount due had not in fact been paid. During the pendency of this suit all the rent has been paid as it accrued, and has been received by the appellant under a stipulation that it should not prejudice her efforts to enforce the forfeiture. The appellee has done all that could reasonably be required to make amends for the inadvertence which caused the brief delay in the December payment and to continue the discharge of his obligations under the lease, and a Court of equity will not permit him under the circumstances of this case to "be subjected to unjustifiable loss without blame or misconduct on his part." *Baynard* v. *Norris,* 5 Gill, 477.

The appellant has relied upon the expression in the opinion of *Carpenter* v. *Wilson, supra,* where the enforcement of a forfeiture was obviated, that "a very different case would be presented if the landlord had not for a long time accepted the rent without objection after it had accrued, and had on the first attempted payment of rent in arrear refused it and claimed the forfeiture." This language was used in reference to the fact that although the rent had been customarily received after the time designated in the agreement, yet the landlord without *demand* and before the usual time of payment "resorted to the harsh provisions of the lease by which he expected to be able to have the lease forfeited and the premises, with all the valuable repairs and improvements, confiscated for his own use." It was obviously not intended, by the expression which the appellant has emphasized, to qualify the general principle announced in the same opinion that a Court of equity has power to relieve from a forfeiture for the non-payment of rent upon the ground that the condition is intended as a mere security.

The case of *Shanfelter* v. *Horner,* 81 Md. 621, which was cited by the appellant to the proposition that the parties to a tenancy should be held by the terms upon which they have agreed, was a suit at law and not a proceeding in equity, and it was distinctly stated by the Court in the opinion that

the lessee did not claim to have a valid excuse for not paying
the rent.

Upon the facts.appearing in this record we have no hesi-
tation in affirming the decree of the learned Court below
restraining the attempted forfeiture.

*Decree affirmed, with costs.*