EVERGREEN AMUSEMENT CORPORA-
TION *v.* PACHEO ET AL.

[No. 42, September Term, 1958.]

*Decided November 19, 1958.*

The cause was argued before BRUNE, C. J., and HENDER-SON, HAMMOND, PRESCOTT and HORNEY, JJ.

*Allen A. Sperling,* for appellant.

*Edward J. Bagley,* with whom was *Ernest A. Loveless, Jr.,* on the brief, for appellees.

HAMMOND, J., delivered the opinion of the Court.

A corporate tenant filed a bill seeking a declaration that its lease had not been effectively forfeited by the landlords in January 1958 and that it was valid and subsisting. The chancellor decreed that the lease had been forfeited and that the tenant vacate the premises immediately, and dismissed the bill.

The lease demised some eleven acres of land in Prince George's County to be used for an open-air moving picture theatre. The rent was $150.00 a month payable in advance on the first day of each month. The term was from April 1, 1953, to March 31, 1958, with an option of renewal for another five-year term and with an option to purchase, neither

of which had been exercised before the forfeiture. The tenant promised to pay any increase in taxes brought about solely by the erection of improvements on the leased land and agreed to install pipes to properly drain the land, in accordance with specifications made a part of the lease. The tenant specifically agreed in the lease that if the rent became ten days in arrears, the landlords would have the right to reenter and take possession of the leased premises.

The tenant made only small partial payments towards the increased taxes it had agreed to pay, during the years it was in possession; and it had never installed the drainage pipe although demand had been made upon it to do so. Each month's rent was punctually paid, as agreed, until November 1957. A check for the November rent was returned by the bank to the landlords with the notation "insufficient funds". After inquiry to the bank revealed that it would be useless again to put the check through, the landlords continued to hold it; the tenant issued a check for the December rent, which likewise came back because of insufficient funds. The landlords notified an officer of the tenant verbally and by letter several times that the checks must be made good immediately. They say that the tenant was told that if the checks were not made good, the lease would be forfeited. The tenant's officers deny this but admit that demand was made for immediate payment of the rent due for November and December. The January 1958 rent was not paid, and on January 15, the landlords sent the tenant a letter, received on January 16, in which it was notified that in accordance with the forfeiture provision of the lease, it was cancelled "due to default in payment of your rent for the months of November and December, 1957, and January 1958." A day or two after the receipt of this letter, the rent for the three months in question was paid by a cashier's check, the funds having been advanced on behalf of the corporation by an officer, who was also a stockholder. The rent for February and March, as it came due, was tendered to the landlords by a stockholder, on behalf of the tenant, and refused.

At the trial of the case, it was shown that the corporate tenant had no cash, that all of its tangible personal assets

were covered by mortgages or conditional contracts of sale, that there were at least three judgments against it, that its gate receipts had been attached, that its officers and stockholders were willing to advance on its behalf all sums then due by it to the landlords but were unwilling to invest any money in the corporation (because, if they did so, it would be subject to seizure by other creditors), and that the corporation did not have the financial resources or other means of meeting any of its bills. The tenant owed between $45,000 and $50,000 on notes and conditional contracts of sale. Although it claimed an equity of $70,000 in personal property, the chancellor found, we think justifiably, that there was no credible proof of any such worth. He deemed it a "nebulous equity that is bound up in conditional contracts of sale or doesn't physically exist", and found the tenant unquestionably insolvent in the sense that it could not meet its debts in the ordinary course of business (if indeed it was not insolvent in the bankruptcy sense).

The tenant stipulated that (a) acceptance by the landlords of the November, December and January rent did not, of itself, constitute a waiver of the forfeiture, since they had declared the lease forfeited before its payment and acceptance, (as was held in *Morrison v. Smith*, 90 Md. 76), and (b) that the landlords had consistently maintained their election to forfeit the lease. Therefore, the parties agree that no question of waiver of the forfeiture was raised below and that the question is not before this Court nor of pertinence in the case. The tenant's contention below and here is that equity will relieve against the forfeiture of a lease occasioned by the nonpayment of rent if there is a tender of all that is due and owing, and that the offer by the father of a stockholder and officer of the corporate tenant to pay all that was due to the landlords was a tender sufficient to require the equity court to enjoin the forfeiture. The first premise of the tenant is sound but under the facts of this case, the conclusion it urges does not follow. "It is an established doctrine that equity will grant relief from a forfeiture, where such a condition is provided to secure the payment of money, as in the case of a right of re-entry for the non-payment of rent at the time

designated in the lease." *Wylie v. Kirby*, 115 Md. 282, 286. The Court in that case went on to quote from *Taylor on Landlord and Tenant* the observation that courts of equity will relieve where the omission and subsequent forfeiture are the result of mistake or accident and the injury and inconvenience arising from it are capable of compensation, "but where the transaction is wilfull, or the compensation impracticable, they invariably refuse to interfere." The principle explained by the language last quoted has been applied in cases where the tenant was insolvent. In such situations the courts have refused to compel a landlord to continue or renew a lease with a tenant whose promise to pay the rent called for by the lease is manifestly worthless, and will, in all likelihood, continue to be so. 2 Pomeroy, *Equity Jurisprudence,* Fifth Ed., Sec. 451, p. 285, points out that "* * * a court of equity should not grant relief from a forfeiture unless it can be done with justice to the other party", and uses insolvency as an illustration, saying: "Thus insolvency may be a good ground for refusing relief in equity against a forfeiture, where solvency is necessary to the due performance of the condition the breach of which incurred the forfeiture, inasmuch as the object of courts is to grant relief only where a subsequent compliance with the covenant is assured." To the same effect is 1 Tiffany, *Real Property,* Third Ed., Sec. 215, p. 371; and 1 *American Law of Property,* Sec. 3.96, where it is said that forfeiture of a lease will not be enjoined unless the court is "* * * able to award the lessor substantially what was contemplated under the lease without subjecting him to loss" (added in the note to the quoted statement is the following: "So the court may refuse relief if it appears that the lessee cannot or is not likely to fulfill his obligations under the lease in the future"). See also 32 Am. Jur. *Landlord and Tenant* Sec. 896, p. 759.

The decisions justify the conclusions of the textwriters, as *Dunklee v. Adams,* 20 Vt. 415, 50 Am. Dec. 44, 49, makes clear in the following language: "It is said in several of the English cases, that the insolvency of the party, by whom the forfeiture of an estate has been incurred, furnishing a presumption of his inability to perform his covenants, is a proper

ground of refusing relief. * * * It is not intended to say, that Dunklee's insolvency is of itself a breach of his covenant; but when * * * he comes into a court of equity, asking to have the forfeiture vacated * * * it may, and we think does, furnish a very strong reason, why the relief sought should not be granted." See also *Sunday Lake Mining Co. v. Wakefield* (Wis.), 39 N. W. 136, 138; *Wender Blue Gem Coal Co. v. Louisville Property Co.* (Ky.), 125 S. W. 732. Although not directly in point, the cases of *Kann v. King*, 204 U. S. 43, 51 L. Ed. 360, and *Eno Systems, Inc. v. Eno* (Mass.), 41 N. E. 2d 17, 19, illustrate the propriety of the denial of equitable relief against forfeitures where, if relief were granted, it would seem that only harm could come to the one who had invoked the forfeiture.

We think there can be no doubt that the tenant was insolvent to such a degree that it would have been unjust to the landlords to enjoin the forfeiture. Although the lease in the case before us had no provision for forfeiture upon the insolvency of the tenant, in leases in which there were such provisions, the courts have held that a landlord was entitled to possession of the leased premises where the tenant was unable to meet its obligations as they matured. In the case of *In re Walker*, 93 F. 2d 281, 283 (C. C. A. 2d 1937), Judge Learned Hand said that the insolvency mentioned in the lease could not have been other than this kind, that is "the insolvency which throws the lessor's relations into confusion, delays payment of the rent, impounds his property for an indefinite time, and in general makes it important for him to be free to reenter." See also *In re Wise Shoe Co., Inc.*, 26 F. Supp. 762 (S. D. N. Y. 1938); *In re Schulte Retail Stores Corp.*, 22 F. Supp. 612 (S. D. N. Y. 1937).

The landlords did not rely on the breach of the covenants to pay the added taxes and to install drainage pipes in invoking the forfeiture; and we see no need to consider the significance of these breaches, or that of the sufficiency of the tender by one other than the tenant, for, in our view, the course the chancellor followed was fully justified by the financial condition of the tenant.

*Decree affirmed, with costs.*