In the Matter of SHELCO
INCORPORATED, Debtor.

ELKTON ASSOCIATES, Plaintiff,

v.

SHELCO INCORPORATED, Defendant.

Bankruptcy No. 89–401.
Motion No. 89–138.

United States Bankruptcy Court,
D. Delaware.

Oct. 11, 1989.

Vincent A. Bifferato, Bryde, Ament, Evans, Lynch & Carr, Wilmington, Del., and Jay C. Emrey, III, Baker and Thomey, P.A., Elkton, Md., for plaintiff.

Joseph B. Green, Green, Green & Godowsky, Wilmington, Del., for debtor/defendant.

## MEMORANDUM OPINION AND ORDER

HELEN S. BALICK, Bankruptcy Judge.

Two motions before the court involve Shelco, Inc.'s lease with Elkton Associates. Shelco seeks to assume that lease for its restaurant business while Elkton Associates has moved for relief from the automatic stay in order to proceed with eviction in state court. This court has jurisdiction in both these matters under 28 U.S.C. §§ 157(b)(2)(A) and 157(b)(2)(G), respectively.

### BACKGROUND

Shelco, Inc., t/a Chat–N–Chew Restaurant, operates a family restaurant/pizza parlor with carryout at the Big Elk Mall in Elkton, Maryland. Shelco did not pay its February 1989 rent due, in part, to decreased business because of a winter slump and increased restaurant competition. Elkton Associates subsequently sent default notices to Shelco's president and sole shareholder Stuart Cohen informing him of the arrearages. Despite some initial workout efforts, Elkton Associates filed suit in the Maryland District Court for Cecil County on April 6, 1989, to have Shelco evicted because it was, at this point, three months in arrears of rent. In Maryland District Court on April 18, 1989, Cohen and Elkton Associates agreed to a stipulation whereby Shelco would pay the rent due as follows: $4,000.00 on April 18, $4,062.49 on May 2, $2,650.83 on May 16, and $5,301.66 on May 30. Though Cohen's initial check for $4,000.00 on behalf of Shelco was dishonored by the bank, a second certified check for $4,000.00 was forwarded to Elkton Associates; nevertheless, no other subsequent payments were received by Elkton Associates. Consequently, Glenn Weinberg, manager of the Mall and agent for Elkton Associates, wrote Cohen on May 26, 1989 advising him that based on back rent of $10,176.56 due Elkton Associates, "Landlord hereby elects to terminate the Lease, as permitted by Section 39.A of the Lease." Section 39.A provides:

> If Tenant shall violate either (a) the covenant to pay rent and shall fail to comply with said covenant within five (5) days after the time such rent is due and payable to Landlord, or (b) any other covenant, except (a) above, made by it in this Agreement and shall fail to comply or commence compliance within five (5) days after being sent written notice of such violation by Landlord, Landlord may reenter the premises and declare this Lease and the Tenancy hereby created terminated; Landlord shall be entitled to the benefit of all provisions of applicable laws respecting the speedy recovery of lands and tenements held over by Tenant or proceedings in forcible entry and detainer.

Shelco did not vacate the premises after Cohen received this letter. Through its Maryland counsel, Shelco renewed its workout efforts by proposing to assign the proceeds of a Pennsylvania liquor license (belonging to another business controlled by Cohen, Stedi, Inc.) to bring the rent current. This workout attempt failed. Elkton Associates renewed its request to the Maryland District Court to oust Shelco under *Md. Real Prop.Code Ann.* § 8–401. On July 11, 1989, Shelco filed a Chapter 11 petition which stayed the Maryland eviction proceedings scheduled that very day. Therefore, a final judgment of eviction never issued.

The parties dispute the effect of Elkton Associates' May 26 letter to Shelco. Elkton views it as an exercise of its right of reentry pursuant to section 39.A of the lease and thus a termination of the leasehold. In contrast, Shelco argues that the letter was merely an election to terminate the lease and had in itself no legal force or effect. Another dispute hinges on the likelihood of Stedi, Inc.'s liquor license sale going through so that the proceeds would be available to Shelco to pay off the back rent.

Only one contingency exists with respect to the sale of Stedi's liquor license to Baldino's Restaurant, Inc., namely, approval by the Pennsylvania Liquor Control Board which depends, in part, on constructional improvements being made to Baldino's Restaurant. The contract provides for a consideration of $150,000.00 for the license and set settlement within 14 days following the PLCB's approval. November 19, 1989 is the latest date for settlement. Yet, Stedi, Inc. is encumbered by unsecured debts of about $100,000–$120,000. In addition, Shelco owes Maryland retail sales tax of approximately $2,000.00 as well as $30,000.00 of federal withholding tax. Furthermore, Mr. Cohen's separation from his wife also complicates the situation. Elkton Associates maintains that the availability of these funds for Shelco's use is highly speculative.

The lease under which Shelco is in possession was first entered into in 1975 and has been amended several times. Shelco made no rental payments since January 1989. There is a pre-petition arrearage of $15,478.22 representing rent, late charges, maintenance fees, and water and sewer charges. Post-petition debt on the lease was over $6,000.00, but Shelco made one post-petition payment on the hearing date which does not affect either parties' legal rights as to the instant motions. The original lease as amended on December 12, 1986, extended Shelco's leasehold to October 31, 1991 and gave Shelco a five-year option to extend the lease until October 31, 1996.

ISSUE

The question central to whether Shelco may assume the lease between it and Elkton Associates or whether Elkton Associates should be granted relief from stay to proceed with Shelco's eviction from the premises is—Did Shelco as of the filing date of its Chapter 11 case have any interest in the leasehold?

DISCUSSION

If Shelco had no interest in the leasehold, then there is no property which became part of the estate and Elkton Associates' motion for relief from stay should be granted. Conversely, if Shelco retained an interest in the lease, then its motion to assume the lease should be considered in conjunction with Shelco's ability to provide adequate assurance to cure default and maintain future rent payments. 11 U.S.C. §§ 365(b)(1), 365(b)(3). If adequate assurance is found, Shelco as debtor-in-possession may assume the unexpired lease. 11 U.S.C. §§ 365(a), 1107(a).

In deciding whether Shelco may assume the lease, this court must first determine whether the lease terminated under applicable state law prior to the filing of the bankruptcy petition. 11 U.S.C. § 365(c)(3). *See Kopelman v. Halvajian (In re Triangle Laboratories, Inc.),* 663 F.2d 463, 471 (3d. Cir.1981). If the lease in fact terminated pre-petition, the next question is whether the termination could have been reversed under a state anti-forfeiture provision or other applicable state law. *City of Valdez v. Waterkist Corp. (In re Waterkist),* 775 F.2d 1089, 1091 (9th Cir.1985).

This approach prevents the debtor-in-possession from abusing the bankruptcy process by attempting to assume a lease which would be otherwise unassumable absent bankruptcy proceedings; still, it allows the debtor-in-possession the same opportunities to avoid forfeiture of a lease that would have been available in state court. *City of Valdez, supra*, at 1091. In the present proceeding, this court is bound by Maryland law in answering these questions since the subject property is located in Maryland and the lease itself states the Maryland law governs its construction. *See Butner v. United States*, 440 U.S. 48, 55, 99 S.Ct. 914, 918, 59 L.Ed.2d 136, 141–42 (1979) ("Property interests are created and defined by state law. Unless some federal interest requires a different result, there is no reason why such interests should be analyzed differently simply because an interested party is involved in a bankruptcy proceeding.").

Turning to the question of lease termination, Elkton Associates contends that its letter of May 26 effectively terminated the lease by exercising its right of reentry under Section 39.A of the Lease. Under Maryland law, a right of reentry may be made by a landlord for the breach of a covenant in a lease, and it is not necessary that the landlord resort to legal process. *Toy Fair, Inc. v. Kimmel*, 177 F.Supp. 129 (D.Md. 1959). Specifically, a tenant's breach of a covenant which gives the landlord a power of termination coupled with written notice exercising this power unilaterally terminates the tenancy. *See Cabana, Inc. v. Eastern Air Control, Inc.*, 61 Md.App. 609, 487 A.2d 1209, *cert. denied*, 302 Md. 680, 490 A.2d 718 (1985). In *20251 Century Associates Ltd. Partnership v. Opus Corp. (In re Opus)*, 89 B.R. 9 (Bankr.D.Md. 1988), the bankruptcy court applied Maryland law to hold, upon facts similar to those at bar, that the landlord's written notice to the debtor to terminate based on default of rent exercised its legal right under the lease and, therefore, the lease terminated pre-petition by the landlord's actions. Indeed, numerous other bankruptcy decisions have found under applicable state law that such notice based on a right of reentry

provision in a lease is effective termination. *See, e.g., In re Scarsdale Tires Inc.*, 47 B.R. 478 (S.D.N.Y.1985); *Lifshutz v. Trang (In re Trang)*, 58 B.R. 183 (Bankr.S.D.Tex. 1985).

Applying this strict construction of the lease terms to the present facts, it is apparent that Elkton Associates terminated the lease by exercising its right of reentry through its May 26 letter to Shelco. This right arose under Section 39.A of the Lease when Shelco failed to pay rent February and thereafter. Even though Shelco made one $4,000.00 payment according to the April 18 stipulation, it still was significantly in arrears for rent. Thus, Elkton Associates did not waive its rights by accepting a part of Shelco's back rent. As a result, Shelco had no legal rights under the lease. It only retained possession pending the outcome of the eviction proceeding as well as any equitable interest under state law to revive the lease.

Turning to the issue of redeeming the lease, it is clear that forfeiture of leases are not favored under Maryland law. Where circumstances warrant, a court of equity will grant equitable relief from a lease forfeiture. *Dreisonstok v. Dworman Bldg. Corp.*, 264 Md. 50, 284 A.2d 400 (1970); *Wylie v. Kirby*, 115 Md. 282, 80 A. 962 (1911). In *Wylie*, the Maryland high court addressed the question of whether a lessee could seek the aid of a court of equity to restrain forfeiture in light of a right of reentry in the lease. The court held that:

> Where a lease contains a condition that the lessor may re-enter and put an end to the lessee's estate, or even that the lease shall be void, upon the lessee's failure to pay the rent at the time specified, it is well settled that a court of equity will relieve the lessee and set aside a forfeiture incurred by his breach of the condition, whether the lessor has or has not entered and dispossessed the tenant. This rule is based upon the notion that such condition and forfeiture are intended merely as a security for the payment of money.

115 Md. at 287, 80 A. at 964 (quoting 1 Pomeroy's Eq. Jur. § 453). Consequently, Maryland law clearly permits revival of a lease where the termination of the lease constitutes a forfeiture. *See also Md. Real Prop. Code Ann.* § 8–401(c)(5) and 8–401(e) (anti-forfeiture statute). Yet, this policy is subject to the "fair dealing" rule which mandates the tenant to comply with fundamental principles of fair dealing in order for equitable relief to be granted. *Dreisonstok,* 284 A.2d at 404. Here, Shelco's breach does not appear willful nor grossly negligent, but due to financial difficulties which prompted its Chapter 11 filing. Furthermore, Shelco has been a tenant at the Big Elk Mall for over 13 years, and no evidence was presented by the landlord to indicate prior defaults or continued delays in payments prior to last February. Still, as a tenant seeking equitable relief to avoid forfeiture, Shelco must do equity which usually means tendering all rent, late charges, interest and costs due under the lease. *Streeter v. Middlemas,* 240 Md. 169, 213 A.2d 471 (1965).

In the bankruptcy setting, there can be no termination of a commercial lease within the context of Sections 365(c)(3) or 541(b)(2) of the Code so long as it is subject to reinstatement under the terms of the lease or applicable law. Traditionally, lease forfeiture clauses are liberally construed in favor of the bankrupt lessee, especially in reorganization cases. *See Finn v. Meighan,* 325 U.S. 300, 65 S.Ct. 1147, 89 L.Ed. 1624 (1945); *In re Fleetwood Motel Corp.,* 335 F.2d 857 (3d Cir.1964). Though Maryland law makes it easy for a landlord to exercise a right of reentry on a leasehold (which does not require an ejectment action as is necessary for reentry of freehold estates), Maryland policy abhors forfeiture and allows redemption of leases where circumstances warrant. In *Opus, supra,* the court applied its equitable powers to allow the debtor a limited time frame to get current with its rent. *Opus,* 89 B.R. at 10–11. The *Opus* court's application of Maryland law and the Code will be followed here.

Therefore, Shelco may assume the lease under Section 365 of the Code provided that it cures all pre-petition defaults by November 30, 1989 and is current on its post-petition obligations by November 9, 1989. (i.e., 60. days from Shelco's Chapter 11 filing to September 9 plus 60 additional days on Shelco's motion to extend the period to assume or reject.)

Elkton Associates' motion for relief from stay must be denied at this stage of the proceedings and the stay conditionally extended. Shelco needs its leasehold to stay in business. Since it has no secured debt, has made cutbacks in its expenses, has a liquor license for the premises, is revamping its format to off-set competition, and anticipates receiving the proceeds of sale of Stedi, Inc.'s liquor license on or before the end of November, there is a realistic possibility of an effective reorganization. *Cf. In re Park Timbers,* 58 B.R. 647 (Bankr.D. Del.1985). This is sufficient not only to provide adequate protection but also the adequate assurance requirement necessary to the assumption of the lease.

An order in accordance with this Memorandum Opinion is attached.

### ORDER

AND NOW, October 11, 1989, for the reasons stated in the attached Memorandum Opinion,

IT IS ORDERED THAT:

1.  Shelco Incorporated's motion to assume the lease between it and Elkton Associates is GRANTED provided it is current on its post-petition obligations by November 9, 1989 and it cures all pre-petition defaults by November 30, 1989.

2.  The motion of Elkton Associates for relief from the automatic stay provisions of 11 U.S.C. § 362(a) to proceed with eviction proceedings is DENIED; however, in the event Shelco fails to comply with the provisions of ¶ 1, *supra,* relief will be granted without further hearing 10 days following the fil-

ing and serving of an affidavit of default.