**In re P & J MARKETING, INC., Debtor.**

**P & J MARKETING, INC., Plaintiff,**

**v.**

**OLD CHEPACHET VILLAGE, INC., Defendant.**

**Bankruptcy No. 90–11518.
Adv. No. 91–1004.**

United States Bankruptcy Court,
D. Rhode Island.

July 13, 1992.

George M. Prescott, Lincoln, R.I., for debtor/plaintiff.

F. Monroe Allen, Providence, R.I., for defendant.

## DECISION

ARTHUR N. VOTOLATO, Jr.,
Bankruptcy Judge.

Heard on November 15, 18, 19, and 21, 1991, on P & J Marketing, Inc.'s Complaint seeking a declaration that it still has the right to exercise an option to purchase real estate owned by the Defendant/Lessor, Old Chepachet Village, Inc. (Old Chepachet). P & J also requests compensatory damages, and an order that said damages be offset against the original option purchase price. The Defendant, Old Chepachet, has filed a Counterclaim demanding possession of the premises and an order for payment of rental arrearages. During the course of this proceeding the parties have raised, and exploited, many issues of law and fact.

### FACTS AND BACKGROUND

On May 23, 1986, P & J Marketing and Old Chepachet entered into a lease of the property located in Glocester, Rhode Is-

land, consisting of 23½ acres of land and an 8,220 square foot commercial building.

The pertinent provisions of the lease, for purposes of our analysis are:

1. A two year base term, expiring on May 23, 1988;

2. An initial monthly rent of $1,500, increasing to $2,500 in October, 1986, and then increasing to $3,500 from March, 1987 forward;

3. Use of the premises as an antique market and auction center, including the Lessee's right to sublet space within the building and grounds for antique sales and other compatible retail use;

4. Renewal options for two one-year periods, upon thirty days written notice of Lessee's intention to exercise said options;

5. The following option to purchase the entire leased premises for $530,000:

The lessee shall have the option to purchase the land and the buildings and the right-of-way described in paragraph 1 above for the sum of Five Hundred Thirty Thousand ($530,000.00) Dollars and said option shall remain in effect during the period of the lease or extension thereof, during a period of time prior to termination of the lease by lessors or lessee for failure of the lessors or lessee to comply with the terms and conditions of the said lease or for a period of four (4) years from the date of execution of this lease, whichever is shorter.

*See* Exhibit 1 at 4.

From the inception of what has always been a very acrimonious business relationship, neither party lived up to the expectations of the other. Nevertheless, in February, 1987, after negotiations, the parties agreed to eliminate the rent escalation provisions, and to hold the rent to $2,000 per month.

On May 23, 1990, the lease expired *by its terms,* with no action having been taken to renew or renegotiate either the original lease or the purchase option.

On May 7, 1990, the Rhode Island District Court, Seventh Division, ruled in Old Chepachet's favor on its action for possession and for past due rent in the amount of $32,490, plus interest and costs.[1] P & J appealed that decision to the Superior Court, and posted a $3,200 bond. Old Chepachet moved to dismiss the appeal for failure to file a sufficient bond, and on August 17, 1990 the Rhode Island Superior Court remanded the case to the District Court, with instructions to determine the proper bond. On September 17, 1990, the Debtor filed the instant Chapter 11 petition. On December 21, 1990, Old Chepachet filed a motion for relief from the automatic stay and for authority to pursue the State court litigation, which motion was granted on February 5, 1991, after hearing. On June 20, 1991, on the Debtor's motion, the trespass and eviction litigation and P & J's State court complaint (seeking relief essentially similar to that requested in the instant adversary proceeding), were consolidated by the Superior Court. On July 25, 1991, the District Court determined, on remand, that the bond indeed was insufficient, and set the appeal bond at $32,000. The Defendants failed to secure and/or post the higher bond. Thereafter, Old Chepachet obtained an execution on its judgment in the amount of $32,490, which has been held in abeyance pending the outcome of this proceeding.

The Debtor filed the instant adversary proceeding on January 8, 1991. At the commencement of the trial, the Court (accompanied by the parties) conducted a view of the subject property and improvements, which were constructed in 1977. Our inspection of the property, as supported by the testimony and photographs in evidence, revealed: numerous roof leaks throughout the building; repairs to rotted wooden posts supporting the "overhang"; various minor "wear and tear"-type cracks and defects in the entrance driveway and parking lot asphalt pavement; abandoned, former locations of light poles no longer in place; vertical wooden siding on the south side of the building in need of refinishing.

Paul and Joan Crabb, the Debtor's principals, and antique dealers by trade, are al-

---

1. As of June 23, 1991, the Debtor had paid $83,385 of $118,500 in lease payments due for the period.

leged creditors in the amount of $15,000 for "monies loaned to the corporation," for rental payments made on behalf of the Debtor. Paul Crabb testified that because of the defective premises, the Debtor was unable to sublease space to other dealers, as had been the plan. The loss of sub-tenant rental income, according to Crabb, was a direct result of the condition of the property, particularly the roof leaks.

## DISCUSSION

The Debtor requests, pursuant to the authority conferred under 11 U.S.C. § 105, that we declare the purchase option to be still in effect, at the original option price of $530,000, less the cost to cure all of the various problems with the premises. The Debtor requests said relief notwithstanding the State court judgment and execution for possession and back rent, and notwithstanding the fact that the lease has long since expired. The Debtor offers no statutory or decisional authority in support of its position, other than § 105 of the Bankruptcy Code.

We confess, both at trial and during our deliberations herein, to having overindulged the Debtor in its persistent concentration on wide-ranging, but not dispositive material as the basis for its entitlement to relief. After giving the Debtor the benefit of much doubt as to the correctness of its position, we conclude that the resolution of this dispute is governed by legal, and not equitable considerations.

Addressing whether § 105(a) confers the authority to grant the type and extent of equitable relief sought by the Debtor (because the purchase option expired by the terms of the lease under which it existed), requires the exercise of unprecedented (and probably unauthorized) equitable discretion to resurrect the lease and to reinstitute the purchase option, beyond even the most liberal application of § 105 relief. The United States District Court for the District of Maine not too long ago admonished this Court, saying that § 105(a) " 'does not authorize the bankruptcy courts to create substantive rights that are otherwise unavailable under applicable law, or constitute a roving commission to do equity.' "

*Wilner Wood Products Co. v. State of Maine (In re Wilner Wood Products, Co.),* 128 B.R. 1, 3 (D.Me.1991) (quoting *United States v. Sutton,* 786 F.2d 1305, 1308 (5th Cir.1986)). *See also In re Plaza de Diego Shopping Ctr., Inc.,* 911 F.2d 820, 830 (1st Cir.1990) ("the bankruptcy court's equitable discretion is limited and cannot be used in a manner inconsistent with the Bankruptcy Code").

The lease in question and all of its terms and provisions terminated long before the petition was filed, and there has been no effective extension of its terms. This Court was recently presented with a similar argument in *In re Gromyko, Inc.,* 142 B.R. 20, 21–22 (Bankr.D.R.I.1992), where we held:

It is well settled that the bankruptcy court does not have the authority to resurrect a lease which has been terminated prior to the filing of bankruptcy. *See Elkton v. Shelco, Inc. (Matter of Shelco, Inc.),* 107 B.R. 483 (Bankr.D.Del.1989); *Lifshutz v. Trang (In re Trang),* 58 B.R. 183 (Bankr.S.D.Tex.1985); *Chart House, Inc. v. Maxwell (In re Maxwell),* 40 B.R. 231 (N.D.Ill.1984). Furthermore, the fact that the Debtor possessed an equitable interest in the premises when the bankruptcy petition was filed does not materially advance the Debtor's cause, *i.e.,* " '[t]he fact that the automatic stay gives limited and temporary protection to a holdover tenant-debtor, based solely on naked possession, does not mean that there is a viable executory contract which a debtor may assume....' " *In re Maxwell,* 40 B.R. at 237 (quoting *Matter of R.R.S., Inc.,* 7 B.R. 870, 872 (Bankr. M.D.Fla.1980)).

To overcome its "problem," the Debtor urges that we find Old Chepachet's alleged breaches of the lease to be so substantial that, "in good conscience," the Debtors ought to be given an opportunity to exercise the purchase option. In an over-abundance of deference to said request, we conducted (needlessly, and with hindsight, incorrectly) a thorough review of the evidence introduced in support of the lessee's position, to determine the magnitude of the lessors' alleged defaults, and the claimed set-off applicable to the purchase price.

Although the roof obviously leaked in many places, the Crabbs' allegations as to certain sub-tenants who allegedly vacated (or never became sub-tenants) the premises as a result of the leaking roof, are not supported by competent evidence. Neither are we able to discern any sufficient evidentiary or legal basis upon which to grant the various other types of equitable relief demanded by the Debtor.

Finally, as a practical matter, and even if we are incorrect in our legal conclusions herein, there is no evidence whatsoever that either the Debtor, or the Crabbs personally, are financially able to exercise the purchase option, even if it were still available. Indeed, all the evidence is to the contrary. While the frustrations of the Debtor's principals in this failed venture are understandable, we cannot cure their business problems by granting the relief sought here.

Accordingly, and in recognition of the above-referenced appellate admonitions, the Debtor's request to reinstate the purchase option in the expired lease is DENIED. Likewise, the Debtor's request for damages [2] is not supported by the evidence, and is DENIED.[3] Old Chepachet is authorized to pursue its State court remedies for possession, rent, and use and occupancy in the Rhode Island District Court. Old Chepachet's request for attorney's fees is DENIED.

Enter Judgment consistent with this opinion.

---

**2.** The largest single item of repair for which damages are sought is the parking lot pavement work. The evidence leaves us with a wide gap in the scope and cost of repairs. The Debtor's paving expert testified to a cost of $44,000 to "rip out" the existing asphalt, and "start again from scratch," including recurbing of the entrance road. Old Chepachet countered with an estimate of $2,992 as the necessary cost of repairs for crack sealant, pavement sealer, miscellaneous patching, and restriping. Based on the evidence, as confirmed by the Court's view of the condition of the asphalt, we would, if required to do so, accept the lower of the two estimates, because the cracking and heaving is not extensive, and is not inconsistent with the condition of similar rural facilities located throughout southern New England. This, as well as most of the other cost-of-repair evidence introduced by the Debtor, is far above what is reasonable and necessary.

**3.** Because the Debtor's interest in the subject lease has expired, we cannot resurrect the terms of that lease to award damages for alleged breaches, particularly here when such arguments have been or should have been raised in the State court litigation. *See Gromyko,* 142 B.R. at 21.