ADKINS, J.,
dissenting.
I respectfully dissent because in my view the Majority erroneously confers vested status on a contingent right, leading it to grant heightened protection to the right of reentry in the event of default. By deeming that a right can be *218 vested even though the ability to exercise that right is still subject to a condition precedent, I believe the Majority errs. Only because it views the right of reentry as a vested right does the Majority subject Chapter 286 of the 2007 Session Laws of Maryland (“Chapter 286”) to the heightened scrutiny we explained in Dua and Muskin. See Dua v. Comcast Cable of Md., Inc., 370 Md. 604, 630 n. 9, 805 A.2d 1061, 1076 n. 9 (2002); Muskin v. State Dep’t of Assessments and Taxation, 422 Md. 544, 30 A.3d 962 (2011). Because I do not believe that a contingent right can vest prior to its condition precedent occurring, I would hold Chapter 286 to be a constitutionally permissible substitution of remedies, well within the Legislature’s authority. Additionally, I disagree with the Majority and would hold that the particular substitution of remedies enacted by Chapter 286 is sufficient to protect the ground lease holder’s interests.
I do not disagree with the Majority’s reminder that the Legislature may not retroactively abrogate vested rights. I dissent, nonetheless, because the right of reentry is an inchoate cause of action subject to a condition precedent. Namely, it is subject to the condition precedent of “in the event of default.” No doubt the right of reentry may vest, but that does not, absent the condition precedent occurring, make it vested. Because it is not a vested right, the right of reentry in the event of default should not receive the heightened protections that we grant to vested rights. Yet in its use of Muskin’s “bundle” language, the Majority announces that in Maryland there are three certainties: death, taxes, and ground lease tenants defaulting on their payments. The Majority does not explain why the Maryland ground lease, which differs from a traditional lease only in ways irrelevant to the right of reentry in the event of default,[1] exists on a *219 lonely jurisprudential island where the term “vested” takes on a meaning recognized in no other jurisdiction in this country.
Before further analyzing the difference between something being vested and something being contingent, I want to explain the limits of our holding in Muskin. In Muskin, we held the extinguishment and transfer provisions of Chapter 290 of the 2007 Session Laws of Maryland (“Chapter 290”) invalid under the Maryland Declaration of Rights and Constitution. Muskin, 422 Md. 544, 30 A.3d 962. We relied on Dua, which pronounced it “firmly settled by this Court’s opinions that the Constitution of Maryland prohibits legislation which retroactively abrogates vested rights. No matter how ‘rational’ under particular circumstances, the State is constitutionally precluded from abolishing a vested property right or taking one person’s property and giving it to someone else.” Dua, 370 Md. at 623, 805 A.2d at 1072. Thus, what is a “vested property right” was our primary question in Muskin, as well as in today’s case.
In reaching our holding in Muskin, we examined fully the prohibition against taking away vested rights. 422 Md. at 559-560, 30 A.3d at 971. Prior to Chapter 290, there was no central registry for ground rents in Maryland. Muskin, 422 Md. at 551, 30 A.3d at 966. In Muskin we were asked to review legislation that would create such a registry. Id. Chapter 290 mandated that all ground rent holders submit a form and registration fee to a centralized registry of ground rents by September 30, 2010. See Md.Code (1974, 2010 Repl. Vol.), §§ 8-704 and 8-707(a) of the Real Property Article (“RP”). Most importantly, if a ground rent owner failed to register by the deadline “the reversionary interest ... under the ground lease [would be] extinguished and [the] ground rent [would be] no longer payable[.]” RP § 8-708(a) (emphasis added). Furthermore, “[t]he extinguishment of the *220 ground lease [would be] effective to conclusively vest a fee simple title in the leasehold tenant, free and clear of any and all right, title, or interest of the ground lease holder----” RP § 8-708(c). Chapter 290 was a harsh change, because the extinguishment and transfer provisions “cut off all remedies, while divesting impermissibly the real property and contractual vested rights of ground rent owners.” Muskin, 422 Md. at 563, 30 A.3d at 973. In short, the asset vanished.
In holding the extinguishment and transfer provisions of Chapter 290 invalid under the Maryland Declaration of Rights and Constitution, we explained:
A ground rent lease creates a bundle of vested rights for the ground rent owner, a contractual right to receive ground rent payments and the reversionary interest to re-enter the property in the event of a default or if the leaseholder fails to renew. These two rights cannot be separated one from the other; together they are the essence of this unique property interest, and as such, vested rights analysis must consider them together.
Muskin, 422 Md. at 559-60, 30 A.3d at 971 (footnote omitted). The Majority interprets this reasoning as a pronouncement that the right of reentry in the event of a default, by itself, is a vested right. Yet, what we dealt with in Muskin differs dramatically from the legislation here, and our explanation in Muskin must be seen in its proper perspective. There, the challenged legislation abrogated a vested right — it involved a complete forfeiture of the historical ground rent holder’s interest, merely from a failure to comply timely with a brand new registration requirement.
The retroactive abrogation of a vested right required that we look at all the rights the ground rent holder possessed, and examine them in light of the constitutional standard. See Muskin, 422 Md. at 559-60, 30 A.3d at 971. We categorized the rights in the bundle as follows: (1) the property right to a reversion of ownership at the expiration of the lease; (2) the contractual right to receive ground rent payments; and (3) the right to pursue the remedy of reentry in the event of a *221 default. Id. It is only by considering them together that their respective roles become apparent. The right to re-take possession at the expiration of the lease maintains the leaseholder’s interest in the property, and allows the ground lease to be assigned, devised, or inherited. The contractual right creates the ability for the leaseholder to receive payments. The right of reentry in the event of default allows the leaseholder to enforce performance of the tenant’s payment obligation.
At its core, the ground rent creates two inseparable rights: (1) the right to create an obligation tied to the land, and (2) the right to retain an interest in the land to allow for the enforcement of that obligation. Thus, any change in how one of these rights is treated must be analyzed in the context of the property interest as a whole. Under this framework, Chapter 290 was invalid because it abrogated a vested right and destroyed the underlying purpose of the conveyance, which, from the landlord’s view, was to secure the payment, in perpetuity, of interest on a sum of money. See Banks v. Haskie, 45 Md. 207, 217 (1876). If the ground rent was not registered, even inadvertently, the ground lease holder lost all of its rights. Thus, we held Chapter 290 unconstitutional because it abrogated a vested right.

The Right Of Reentry In The Event Of Default Is Not A Vested Right

In Muskin, we did not address the significant difference between the role of the reversion at the end of the lease, and the contingent right of reentry in the event of default because Muskin was a case about the Legislature’s complete vitiation of the vested end-of-lease term reversion interest upon a failure to register. We had no need to analyze the role of the right of reentry in the event of default with any specificity. Indeed, as we explained, “[e]ven if [the rights in the ground lease] were analyzed separately, to determine one right is vested is to find Chapter 290’s extinguishment scheme flawed fatally.” Muskin, 422 Md. at 560 n. 9, 30 A.3d at 971 n. 9. This is reflected in our explanation of the abrogated vested rights, wherein we recognized that “[t]here can be no reason *222 able doubt that the reversionary interest to real property and the contractual right to receive ground rent are vested rights under Maryland law.” Muskin, 422 Md. at 560, 30 A.3d at 971. Absent from this explanation is any hint or mention of the right of reentry in the event of default. This is because once we determined that a failure to meet Chapter 290’s registration requirement could result in abrogation of the vested right to receive ground rents and the reversion at the expiration of the lease, our analysis was complete. This renders any of our discussion of the right of reentry in the event of default as collateral to the underlying holding in Muskin.
Conversely, because the case before us implicates the distinction between the reversion and the possibility of reverter, it is necessary to address this distinction. The distinction between the end-of-lease reversion, which Chapter 290 imper-missibly abrogated, and the right of reentry in the event of default, which is also referred to as a possibility of reverter,[2] explains why the Legislature is prohibited from abrogating one, but may alter the other. This distinction is best explained as follows:
Despite its purely historical origin, the distinction between the reversion and the possibility of reverter is still significant. The latter is generally a less substantial interest (because whether it ever becomes possessory depends upon some contingency) and is therefore accorded less protection. *223 If an owner in fee simple transfers an estate in fee simple subject to a condition subsequent, the interest he now has is called a right of entry for breach of condition. Here again, the chance that the interest will become possessory depends upon whether there will be a breach of condition, and the interest is thus frequently less substantial than a reversion.
The right of entry which may thus co-exist with a reversion is distinguished from the reversion in that the right of entry involves a power in the owner thereof to terminate the possessory estate or not as he wishes, if the condition is broken. But, in the case of a reversion, a possessory interest revests automatically in the reversioner upon the happening of the event on which the particular estate is to terminate.
1 John A. Borron, Simes and Smith, The Law of Future Interests § 92 (Borron 3d ed. 2002) (footnotes omitted). Thus, in a ground lease, the reversion and the right of reentry in the event of default come from the same source and co-exist. Yet, they are legally distinct future interests and are not treated the same under canons of property law. The reversion, because it is possessory, is given strong legal protections from divestment — it is an estate in property. This protection formed the basis of our holding in Muskin. The possibility of reverter, because it is not a possessory interest prior to its condition precedent occurring, is not an estate in property.
In this case, the difference between the reversion, which Muskin protected, and the right of reentry in the event of default is the difference between a vested right and a contingent right. The Supreme Court has endorsed the following articulation of the difference between an interest in property being vested and being contingent:
“[Rjights are vested, in contradistinction to being expectant or contingent. They are vested when the right to enjoyment, present or prospective, has become the property of some particular person or persons, as a present interest. They are expectant when they depend upon the continued *224 existence of the present condition of things until the happening of some future event. They are contingent when they are only to come into existence on an event or condition which may not happen or be performed until some other event may prevent their vesting.”
Pearsall v. Great Northern Ry. Co., 161 U.S. 646, 673, 16 S.Ct. 705, 713, 40 L.Ed. 838 (1896) (quoting Thomas M. Cooley, The General Principles of Constitutional Law in the United States of America 332 (2d ed. 1891)). Because a tenant’s default is an uncertain event, the right of reentry in the event of default is a contingency. If a right or interest is subject to a contingency, it cannot be considered vested in any recognized sense of the word, whether it is “bundled” with other vested rights or not.[3]
In addition to the Supreme Court, the following states have recognized the distinction between vested rights and contingent rights: Florida, see Clausell v. Hobart Corp., 515 So.2d 1275, 1276 (Fla.1987) (“‘To be vested a right must be more than a mere expectation based on an anticipation of the continuance of an existing law; it must have become a title, legal or equitable, to the present or future enforcement of a demand.’”) (quoting Div. of Workers' Comp. v. Brevda, 420 So.2d 887, 891 (Fla. 1st DCA 1982)); Louisiana, see Tennant v. Russell, 214 La. 1046, 1052, 39 So.2d 726, 728 (La.1949) (“‘The right must be absolute, complete, and unconditional, independent of a contingency, and a mere expectancy of future benefit, or a contingent interest in property ... does not *225 constitute a vested right.’” (quoting 16 C.J.S. Constitutional Law § 215)); Kansas, see Brown v. City of Topeka, 146 Kan. 974, 74 P.2d 142, 143 (Kan.1937) (“a mere expectancy of future benefit, or a contingent interest in property founded on anticipated continuance of existing laws, does not constitute a vested right.”); California, see Dickey v. Ret. Bd., 16 Cal.3d 745, 129 Cal.Rptr. 289, 548 P.2d 689 (Cal.1976) (holding that a right does not vest “but upon the happening of the contingency upon which” the right is conditioned); New Hampshire, see In re Goldman, 151 N.H. 770, 774, 868 A.2d 278, 282 (N.H.2005); Pennsylvania, see Hopkins v. Jones, 2 Pa. 69 (Pa.1845); and Iowa, see Taylor v. Taylor, 118 Iowa 407, 92 N.W. 71 (Iowa 1902) (“whether a legacy is vested or contingent depends upon the event, and not on the time. If the event is uncertain, the legacy is contingent, though the time is fixed; and, if certain, the legacy is vested, although the time is uncertain.”).
Here, the Majority relies on Muskin alone for the proposition that the right of reentry in the event of default is a vested right held by ground lease owners. In so doing, the Majority confers vested status on a right that simply, analytically, cannot be inherently vested. To say a right is vested means “(a) that there is no condition precedent to B’s interest becoming a present estate other than the natural expiration of A’s estate for life, and (b) that it is theoretically possible to identify who would get the right to possession if A’s estate should end at any time.” Thomas F. Bergin and Paul G. Haskell, Preface to Estates in Land and Future Interests, 71 (1st ed. 1966) (italics in original). Prior to the condition precedent occurring, to speak of the right as vested is to conflate the possible with the necessary. Thus, the right should not receive the heightened protection we extended to vested rights in Dua and Muskin.

The Right Of Reentry Is A Remedy

I echo Judge Watts’ view that the right of reentry is a remedy. The Legislature is allowed to alter the remedies available at law. Although vested rights may not be abrogated,
*226 [t]here exists, however, an exception to this general prohibition that applies solely to remedies and rules of evidence. We have held consistently that the Legislature has the power to alter the rules of evidence and remedies, which in turn allows statutes of limitations and evidentiary statutes to affect vested property rights.
Muskin, 422 Md. at 561, 30 A.3d at 971 (emphasis added). Because the right of reentry is merely a contingent right to pursue a given judicial remedy, the Legislature may alter it without running afoul of this Court’s aversion to the retrospective abrogation of vested property rights. See 2 Sutherland’s Statutory Construction § 674 (2d ed. 1904) (“[n]o person can claim a vested right in any particular mode of procedure for the enforcement or defense of his rights.”).
Chapter 286 grants ground lease holders a sufficient substitute method of enforcing a tenant’s obligation to pay — the lien- and-foreclosure process set forth in RP § 8-402.3. The role of the right of reentry in the event of default is to provide a means for ground lease holders to enforce the tenant’s obligation to pay rent. The lien-and-foreclosure process announced by Chapter 286 also effectuates the purpose the Majority ascribes to the right of reentry, allowing the landlord to terminate the leasehold interest and recover rents due.
I disagree with interpreting the ability to retake possession in the event of default as if it were the purpose, or even a purpose, of the ground lease. It is not. The ground rent system arose as a means of exchanging long-term home financing for an indefinite stream of payments. See Banks, 45 Md. at 218. Additionally, the right of reentry in the event of default was written into ground leases to secure payment, not to allow the landlord to retake present possession. See Wylie v. Kirby, 115 Md. 282, 287, 80 A. 962, 964 (1911) (“There is nothing in the lease or in the record at large to justify the inference that the condition of forfeiture was intended to serve any other purpose than that of a security for the payment of the rent at the times and in the installments prescribed[.]”); see also 1 Pomeroy’s Equity Jurisprudence § 453 (4th ed. 1918) (“such condition and forfeiture are intended merely as a *227 security for the payment of money.”); and 3 Story’s Equity Jurisprudence § 1727 (14th ed. 1918) (“the right of entry is deemed to be intended to be a mere security for the payment of rent.”).
Nothing in Chapter 286 changes the underlying nature of the ground lease agreement. The changes in remedy wrought by Chapter 286 do not detract from use of the ground rent as a vehicle to obtain long-term home financing and secure an income stream. Having the right to take possession and terminate the tenant’s right at an earlier date was only a remedy to enforce the tenant’s obligation, not an asset in its own right. Thus, that the landlord may not retake present possession under Chapter 286 does not render the substitution of remedies deficient.
The Majority rests its analysis on our holding in Muskin, and no other source, for the proposition that by sheer fiat a Court may confer vested status on a property right whose condition precedent has not yet occurred. I do not contest that once the tenant does default on his or her payments, then the right of reentry vests. The Legislature does not have the power to abrogate such vested rights. Yet here, the right the Legislature seeks to abrogate is not, by any recognized definition, a vested one. The Legislature is allowed to alter the remedies available at law, and here the new remedy does not deprive the ground lease holder from being made whole in the event of a tenant default, in the manner contemplated by the lease. This makes Chapter 286 a permissible substitution of remedies. Thus the heightened protections contemplated in Dua and reiterated in Muskin do not apply to the right of reentry in the event of default. I would reverse the Circuit Court for Anne Arundel County. Thus, I most respectfully dissent.

. What sets apart the Maryland ground lease from a traditional lease is that the arrangement allows for an enduring option to renew the lease at any point during the ninety-nine year lease term. This complicates the traditional analysis of end-of-term reversion because, unlike traditional leases devoid of a unilateral option to renew, determination of the definitive date that the possessory interest reverts to the landlord *219 can be complicated. Yet this unilateral renewal right does not speak at all to the likelihood of default on rent payments. Thus, our analysis of the right of reentry in the event of default should not be colored by any of the idiosyncracies of this uniquely Maryland conveyance.

. A preeminent treatise on real property, in discussing "Possibilities of reverter,” has explained the contingent nature of the right of reentry upon breach:
[t]he right of re-entry for breach of a condition, annexed to an estate in fee simple, is sometimes referred to as a possibility of reverter. The expression "revert,” however, signifies a return to the grantor of the ownership or possession by operation of law, and is not properly applicable to his reacquisition of the ownership or possession by entry or its equivalent. The right of re-entry in such a case might, consequently, so long as the condition has not been broken, more appropriately be referred to merely as a contingent right of re-entry.
2 Herbert T. Tiffany, The Law of Real Property § 314 (3d ed.1939) (emphasis added) (footnote omitted).

. The Majority makes frequent reference to the “bundle” that is the essence of a ground lease. What the Majority does not address, and Muskin does not explain, is why being present in the same contractual instrument and having a related goal requires that all conveyed rights be of the same vested character. No other jurisdiction or court has ever referred to the concept of a bundle of vested rights, or has articulated any principle that explains why an otherwise contingent right becomes vested merely because of theoretical proximity to vested rights in a lease contract. As explained above, the right of reentry in the event of default is not what uniquely sets apart the Maryland ground lease from its traditional cousins, and it plays no role beyond its traditional role in leases. Thus, it should not get unique treatment in Maryland simply for being part of the same conveyance as vested rights.